SHAW, Justice
(concurring in the result).
The “designation-of-beneficiary” provision [5] in the 1984 “IRA-2000” account materials provided that, at the death of Edward F. Dees, Sr.,
“the interest in the Account ... shall become the property of the primary beneficiary, if he or she survives, and if no primary beneficiary survives, then of the contingent beneficiary, and if no designated beneficiary survives, or the Custodian cannot locate the beneficiary, then the Custodian shall distribute the amounts payable to my spouse, if he or she survives me, and, if not, to my children in equal shares, and if no children survive me, to my estate.”
If no person was designated a primary beneficiary or if no person was designated *815 a contingent beneficiary, then, by the language of the designation-of-beneficiary provision, the account does not pass to the surviving spouse. Specifically, it is only if a primary beneficiary was designated and is dead and a contingent beneficiary was designated and is dead (or cannot be found) that the funds in the account are then distributed to the surviving spouse. The designation-of-beneficiary provision does not supply a result if neither a primary beneficiary nor a contingent beneficiary was designated.[6]
We do not know for sure who, if anyone,[7] Dees might have designated as either primary beneficiary or as contingent beneficiary. The original documents executed in 1984, and any subsequent changes in the beneficiaries made by Dees, were apparently destroyed in the September 11, 2001, terrorist attack on the World Trade Center, where Dean Witter, the predecessor to Morgan Stanley Smith Barney, LLC, kept many of its records. Dees apparently made no changes to the beneficiaries after that time. Over the years Morgan Stanley Smith Barney, LLC, asked Dees to designate a beneficiary, and Dees apparently did not respond.
Here, there was substantial evidence that Dees might have designated his first wife, Mary Helen Dees, as the primary beneficiary and their children, the plaintiffs below, as the contingent beneficiaries. Specifically, testimony indicates that, when the account was opened, Dees stated that, upon his death, the funds in the account would go to Mary and then to their children. After Mary died, Dees purportedly indicated to his children that the funds in the account would go to them. Dees’s statements would tend to indicate his anticipation of the operation of the designation-of-beneficiary provision if Mary was designated as the primary beneficiary and the children were designated as contingent beneficiaries. If the trier of fact believes this evidence and concludes that Mary and the children had been named as beneficiaries in the destroyed documents, then the account would pass to the children by operation of the designation-of-beneficiary provision.
However, there was also substantial evidence that Dees’s second wife, Ardis Dees, was designated as the primary beneficiary and that no contingent beneficiaries were designated. If the trier of fact were to believe this evidence, then the designation-of-beneficiary provision would seem to supply no answer: It does not say what occurs if no contingent beneficiaries are designated. Further, its language does not provide that the account passes to the surviving spouse when no contingent beneficiaries are designated.
Additionally, Martha Dees presented evidence indicating that Dees “intended” the funds in the account to pass to her and not to his children. It is not clear if Dees actually acted to change the designation of beneficiary to reflect that intent; if he did so, the documents reflecting that change were destroyed. Martha apparently at *816 tempted to change the designation of beneficiary, using a power of attorney, to name herself as primary beneficiary, but this was not accomplished.
There appears to me to be a question of fact as to whether (1) Mary was designated as the primary beneficiary and the children were designated as contingent beneficiaries in the original documents or (2) Ardis was subsequently designated as the primary beneficiary and no contingent beneficiaries were designated. If the former is true, then the 1984 designation-of-beneficiary provision appears to operate in favor of Dees’s children. If the latter is true, a legal question as to the applicability of the 1984 designation-of-beneficiary agreement exists. If, as a matter of fact, neither is true, then a legal question exists as to who is entitled to the funds in the account.

. Another designation-of-beneficiary provision, which was apparently issued at a later time and which contains different language, is quoted in the briefs. It is not clear if that provision is applicable, and no legal arguments are advanced indicating that this later provision supersedes the provision in the original 1984 IRA-2000 account agreement. For all that appears, the designation-of-beneficiary provision in the 1984 IRA-2000 account agreement applies in this case.

. The later designation-of-beneficiary provision discussed in note 5 is worded differently and anticipates the lack of a designation of a beneficiary. The 1984 designation-of-beneficiary provision at issue does not anticipate such a scenario.

. An argument in the briefs suggests that the 1984 designation-of-beneficiary provision had to be completed in order for the account to be opened; however, the testimony in the record by an agent of Morgan Stanley Smith Barney, LLC, that is cited does not clearly indicate that it was required that that provision of the agreement be completed.